UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MUSTAFA DAYIB and
ABDULBASIT IBRAHIM,

Defendants.

Cr 26.98 DWF

**INFORMATION**

18 U.S.C. § 1349
18 U.S.C. § 982(a)(7)
28 U.S.C. § 2461

THE UNITED STATES ATTORNEY CHARGES THAT:

At times relevant to this Information:

1.      Medicaid was a federal and state health care program that provided benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services, was responsible for overseeing Medicaid in participating states, including Minnesota. Individuals who received benefits under Medicaid were referred to as "beneficiaries."

2.      Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.      Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965. Each state established and administered its own Medicaid program and



SCANNED

MAY 2 0 2026

U.S. DISTRICT COURT MPLS

*United States v. Dayib, et al.*

determined the type, amount, duration, and scope of services covered within broad federal guidelines.

4. Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services. By submitting a claim, the provider certified, among other things, that the services were rendered to the patient, medically necessary, and not rendered as a result of kickbacks or bribes.

5. Medicaid in Minnesota was administered by the Minnesota Department of Human Services ("DHS"). Beginning in or around July 2020, DHS began operating the Housing Stabilization Services ("HSS") program ("the Program"), which was funded through the state's Medicaid program. The Program was designed to help seniors and people with disabilities, including mental illness and substance use disorders, find and maintain housing.

6. The defendants devised and carried out a scheme to defraud the Program. Rather than provide such help, the defendants obtained and misappropriated hundreds of thousands of dollars in Program funds that were intended as reimbursements for services provided to those people.

A.    **Background on Minnesota's HSS Program**

7. The Program permitted reimbursements for four principal kinds of services:

2

*United States v. Dayib, et al.*

(a)   Housing consultation, during which a consultant (like a social worker or nurse) helped a beneficiary complete a DHS form called a Person-Centered, Housing Focused Plan. The form required minimal information. Consultants could bill Medicaid approximately $174 for a consulting session.

(b)   Housing transition services, during which a provider helped a beneficiary plan for, find, and move into housing. Providers could bill approximately $68 per hour of transition services provided.

(c)   Housing sustaining services, during which a provider helped a beneficiary keep their housing after they had moved in (including through behavioral management of the beneficiary). Providers could bill approximately $68 per hour of sustaining services provided.

(d)   Moving expenses of up to $3,000, subject to conditions.

8.   The Program had the following limited requirements to enroll as a provider: (i) be at least 18 years old, (ii) submit enrollment application to DHS, (iii) undergo a background check, and (iv) complete approximately five hours of online training videos.

9.   Similarly, the Program had limited requirements to enroll as a beneficiary: (i) be at least 18 years old, (ii) have Medicaid coverage, (iii) have a documented disability or "disabling condition," and (iv) be experiencing housing instability. To receive billable services, a beneficiary meeting these requirements was required to complete a form called a Person-Centered Housing Focused Plan, detailing their housing challenges and needs. Once submitted, the beneficiary could enroll with a provider, and the provider could start billing the Program.

10.   To bill, a provider submitted the names of the beneficiary serviced, the type of billable service provided, and the number of hours worked.

*United States v. Dayib, et al.*

## B.    The Defendants and Their Roles

11.    The defendants, MUSTAFA DAYIB ("DAYIB") and ABDULBASIT IBRAHIM ("IBRAHIM"), were residents of Minneapolis, Minnesota.

12.    In or around June 2022, DAYIB and IBRAHIM filed corporate registration paperwork with the Minnesota Secretary of State for Vitality Health Services, LLC ("Vitality").

13.    In or around January 2023, DAYIB and IBRAHIM submitted paperwork to enroll Vitality in the HSS Program and began billing Medicaid for thousands of hours of purported services.

## C.    The Conspiracy to Defraud the HSS Program

14.    From in or around January 2023 through in or around July 2025, in the State and District of Minnesota and elsewhere, the defendants, DAYIB and IBRAHIM, and others did knowingly devise and participate in a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

15.    The purpose of the conspiracy was to fraudulently obtain Medicaid funds by causing the submission of false and fraudulent claims to Medicaid for HSS services that were not actually provided to Medicaid recipients. As Program providers, DAYIB and IBRAHIM were responsible for providing Program-eligible housing services to

4

*United States v. Dayib, et al.*

people in need. However, in furtherance of the scheme, DAYIB and IBRAHIM agreed to and did cause the submission of false claims that significantly overrepresented the hours of services they provided. In so doing, DAYIB and IBRAHIM received HSS Program funds that substantially exceeded the services that were provided.

16. Ultimately, DAYIB and IBRAHIM, by and through Vitality, submitted false and fraudulent claims to, and were reimbursed by, Minnesota Medicaid approximately $975,000 for HSS purportedly provided to approximately 250 beneficiaries when those services were, in fact, not provided as represented.

## Count 1
### (Conspiracy to Commit Health Care Fraud)

17. Paragraphs 1 through 16 are incorporated herein.

18. From in or around January 2023 through in or about July 2025, in the State and District of Minnesota and elsewhere, MUSTAFA DAYIB and ABDULBASIT IBRAHIM did voluntarily and knowingly combine, conspire, confederate, and agree with each other and others, known and unknown to the United States, to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody

5

*United States v. Dayib, et al.*

and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7))

19.     The allegations contained in Count 1 of this Information are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture against defendants MUSTAFA DAYIB and ABDULBASIT IBRAHIM, pursuant to the provisions of Title 18, United States Code, Section 982.

20.     Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crime charged in Count 1 of this Information, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

21.     If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1).

*United States v. Dayib, et al.*

Dated:  May 20, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/Matthew C. Murphy*

BY:    MATTHEW C. MURPHY
Assistant U.S. Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Office: (612) 253-0984
MN Atty ID: 0391948
Matthew.Murphy2@usdoj.gov

LORINDA LARYEA
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

/s/ Shankar Ramamurthy
SHANKAR RAMAMURTHY
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice

7